UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEO METZGAR, individually, and on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>  -against-<br><br>CITY OF PORT JERVIS, KELLY B. DECKER, IN HIS OFFICIAL CAPACITY AS MAYOR, CITY OF PORT JERVIS COMMON COUNCIL, CITY OF PORT JERVIS DEPARTMENT OF PUBLIC WORKS, AND CITY OF PORT JERVIS BUILDING DEPARTMENT,<br><br>       Defendants. | Docket No.:<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, **LEO METZGAR**, by his attorneys, ***BELL LAW GROUP, PLLC***, complaining of the Defendants, **CITY OF PORT JERVIS, KELLY B. DECKER, IN HIS OFFICIAL CAPACITY AS MAYOR, CITY OF PORT JERVIS COMMON COUNCIL, CITY OF PORT JERVIS DEPARTMENT OF PUBLIC WORKS, AND CITY OF PORT JERVIS BUILDING DEPARTMENT**, respectfully alleges, upon information and belief:

## INTRODUCTION

1) This class action lawsuit seeks to end decades of civil rights violations committed by the City of Port Jervis against persons who use wheelchairs, walkers, and other mobility aids who seek to use the sidewalks and pedestrian routes.

2) As the nation celebrates the thirty-third anniversary of the Americans with Disabilities Act, residents of the City of Port Jervis ("City") with mobility disabilities continue to be excluded from the pedestrian culture that is so critical to community life, because many of the City's sidewalks and pedestrian routes are too dangerous, or outright inaccessible, for use by persons with disabilities. Dangers include curbs at pedestrian crossings without curb ramps for wheelchair users or curbs with hazardous curb ramps that are extremely steep or are broken. The

*Metzgar v. City of Port Jervis, et al*
*Complaint*
*1 | P a g e*

City's sidewalks also contain mid-block barriers such as raised concrete, broken surfaces and other obstacles that block the path of travel for wheelchair and cane users.

3) The prevalence of dangerous curb ramps and inaccessible pedestrian routes is particularly troubling on Pike Street, Jersey Avenue, East Main Street, Kingston Avenue, Pennsylvania Avenue, and other locations where the City has received numerous grants, amounting to hundreds of thousands, if not millions, of dollars, related to increasing sidewalk accessibility over the last decade from State and Local taxpayers, which to date, has failed to accomplish, or begin in earnest, its stated goal. Attached as **Exhibit "1"** is a copy of the successful City proposal for use of State funds in the "Port Jervis Safe Sidewalks Program."

4) A curb ramp, also referred to in this Complaint as a curb cut, is a concrete ramp in a street curb that connects the sidewalk to a pedestrian crossing of a street or avenue, and allows wheelchair users to safely and independently enter and exit pedestrian crossings when traveling on the City's sidewalks.

5) The slope, landing, and surface requirements for curb ramps under the Americans with Disabilities Act ("ADA") are minimum safety standards that are critical to maintaining a safe and accessible street scape. When these standards are not followed consistently and accurately, persons with disabilities are put at risk of entering traffic involuntarily, falling, or being unable to cross from one pedestrian sidewalk to another. Without code-compliant curb ramps, individuals who use wheelchairs or other mobility devices cannot navigate safely between sidewalks and pedestrian crosswalks. When faced with a non-compliant curb ramp, such persons must often either travel significant distances out of their way to search for another crossing or forego using the sidewalks entirely and navigate the streets alongside the hazards of vehicular traffic.

6) Though the City has placed curb ramps at many intersections, many locations remain without same, including at crosswalks, and many of the curb cuts and ramps which do exist

*Metzgar v. City of Port Jervis, et al*
*Complaint*
2 | P a g e

have dangerously steep slopes, broken pavement, a lack of level landing and turning space for safe entrance onto the sidewalk at the top of the ramp, and lips at the bottom of ramp, among other barriers that impede wheelchair access. Attached as **Exhibit "2"** is a sampling of problematic locations documented by Plaintiff within the City.

7) The City has also failed to ensure that the paths of travel along its sidewalks and pedestrian routes have a level surface wide enough for wheelchair users and are free of obstacles, such as signposts, benches, trash receptacles, and newspaper stands that impede the access of wheelchair and cane users. Examples of same, as documented by Plaintiff, are found within Exhibit 2.

8) For over 30 years, first under Section 504 of the Rehabilitation Act and later under the Americans with Disabilities Act ("ADA"), cities have been required to take affirmative steps to make their sidewalks and pedestrian routes accessible to persons with disabilities. These laws recognize that the provision of safe, accessible sidewalks and pedestrian routes is a critical program and service of city government. The federal disability access laws also require cities to provide ADA-compliant curb cuts and accessible pedestrian routes every time they resurface streets and sidewalks.

9) Despite the longstanding nature of these requirements, the City has largely ignored them. Indeed, the City has yet to conduct a complete self-evaluation of its sidewalk and pedestrian route program or to create a publicly available transition plan focused on improving the accessibility of its existing sidewalks and pedestrian routes, despite being required to do so since 1992 under federal law. This is despite acknowledging such requirement in 2016 and holding a *pro forma* ADA committee meeting quarterly. Attached as **Exhibit "3"** is a copy of the "Complete Streets" project summary from 2016, which notes the requirement for a transition plan on p. 11.

*Metzgar v. City of Port Jervis, et al*
*Complaint*
3 | P a g e

10) The City also fails to construct compliant curb ramps when it resurfaces streets and sidewalks - choosing instead to rely on patchwork repairs that have resulted in horribly inconsistent curb ramps at intersections throughout the City, including many intersections where none of the corners have consistent curb ramps.

11) Pedestrian safety is at the forefront of a wave of City spending, including the "Safe Sidewalks" project, which implements a variety of City and State-funded allocated funds. While these efforts have cost hundreds of thousands of dollars and have helped make the area a walkable center for non-disabled people, the City has largely ignored its legal obligations to the most vulnerable group of pedestrians - persons with disabilities. *See* Exhibit 1; *see also* Exhibit 3, and **Exhibit "4" (additional 2020 grant)**.

12) As a result, persons such as Plaintiff Leo Metzgar, who uses a wheelchair and travels frequently to downtown neighborhoods for work and civic activities, have no choice but to put their lives at risk on a daily basis due to defective curb ramps and barriers blocking the path of travel on City sidewalks.

13) This lawsuit focuses on the pedestrian routes, referred to as "pedestrian rights-of-way," in all parts of the City of Port Jervis; and in particular, the variety of pedestrian rights of way which have accepted hundreds of thousands of dollars in State funding under various project names, in the name of making them more accessible, but have wholly failed to do so.

14) Defendants' consistent failure to construct accessible sidewalks, curb ramps, and pedestrian crossings denies persons with mobility disabilities meaningful access to the City's program of public sidewalks and pedestrian routes in violation of the Title II of the Americans with Disabilities Act (the "ADA"), and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

*Metzgar v. City of Port Jervis, et al*
*Complaint*
*4 | P a g e*

15) Plaintiffs sue on behalf of themselves and all City of Port Jervis residents with mobility disabilities who are being discriminated against and subjected to hazardous conditions due to the access barriers at sidewalks and pedestrian rights-of-way in the City of Port Jervis.

## JURISDICTION

16) This is an action for declaratory and injunctive relief, brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.,* and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* ("Section 504").

17) This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and Section 504.

18) This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

19) Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b), because Defendants are located within this District and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

20) That at all times hereinafter mentioned, Plaintiff, **LEO METZGAR,** was, and still is, resident of the City of Port Jervis, County of Orange, State of New York; he is a qualified person with a disability under all applicable statutes. Mr. Metzgar uses an electric wheelchair for mobility. He regularly travels in and around the City of Port Jervis, where he uses the pedestrian rights-of-way that comprise the City's sidewalk program. Mr. Metzgar has experienced and continues to experience barriers along these pedestrian rights-of-way because of Defendants' ongoing, continuous violations of the disability access laws.

*Metzgar v. City of Port Jervis, et al*
*Complaint*
5 | P a g e

21) The Plaintiff class consists of all persons with mobility disabilities who have been and are being denied the benefits and advantages of the City's pedestrian rights-of-way because of Defendants' continuing failure to design, construct, and maintain pedestrian rights-of-way that are accessible to persons with mobility disabilities.

22) That at all times hereinafter mentioned, the Defendant **CITY OF PORT JERVIS**, was, and still is, an incorporated city within the County of Orange, State of New York. As such, Defendant qualifies as a "public entity" within the meaning of Title II of the ADA, as that term is defined under 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104; and further, is also a recipient of federal funds subject to the accessibility requirements of Section 504 of the Rehabilitation Act.

23) That at all times hereinafter mentioned, the Defendant **KELLY B. DECKER, IN HIS OFFICIAL CAPACITY AS MAYOR** was and still is the mayor of the Defendant, City of Port Jervis.

24) That at all times hereinafter mentioned, the Defendant **CITY OF PORT JERVIS COMMON COUNCIL**, was and still is a legislative council holding decision making and law making authority for the Defendant, City of Port Jervis.

25) That at all times hereinafter mentioned, the Defendant **CITY OF PORT JERVIS DEPARTMENT OF PUBLIC WORKS** was and still is a municipal agency under the authority and control of Defendant, City of Port Jervis.

26) That at all times hereinafter mentioned, the Defendant **CITY OF PORT JERVIS BUILDING DEPARTMENT** was and still is a municipal agency under the authority and control of Defendant, City of Port Jervis.

27) Defendants **CITY OF PORT JERVIS DEPARTMENT OF PUBLIC WORKS** and **CITY OF PORT JERVIS BUILDING DEPARTMENT** are the public entities responsible

for installing, repairing, and maintaining all pedestrian rights-of-way along City sidewalks and crosswalks.

## CLASS ALLEGATIONS

28) Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action, for injunctive and declaratory relief purposes only, on their own behalf and on behalf of all persons similarly situated. The class that Plaintiffs seek to represent consists of all persons with mobility and/or vision disabilities who use and/or will use City pedestrian rights of-way.

29) The persons in the class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit to the parties and to the Court.

30) There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that they are all being denied, or will be denied, their civil rights and access to Defendants' pedestrian facilities, due to the barriers described herein.

31) Common questions of law and fact predominate, including questions raised by Plaintiffs' allegations that Defendants have failed to provide meaningful access to the City's program of pedestrian rights-of-way to persons with mobility impairments in violation of Title II of the ADA and Section 504. Common questions also include whether Defendants' system-wide policy failures have resulted in their failure to provide compliant, accessible curb ramps whenever they have resurfaced or altered streets and sidewalks and their failure to ensure that their sidewalk program is kept free of obstacles impeding the access of wheelchair and cane users throughout the City of Port Jervis.

32) Plaintiffs are adequate class representatives because they, or the persons they serve, are directly impacted by Defendants' failure to provide program access to the City's sidewalks and pedestrian rights-of-way. The interests of the Plaintiffs are not antagonistic, or in conflict with, the

interests of the class as a whole. The attorneys representing the class are highly trained, duly qualified, and experienced.

33) Plaintiffs' claims are typical of the claims of the class as a whole because the Plaintiffs are similarly affected by Defendants' failure to provide access to the City sidewalks and pedestrian rights-of-way.

34) Defendants have acted and/or failed to act on grounds generally applicable to the class as a whole, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole.

35) References to Plaintiffs shall include each Plaintiff and each member of the class, unless otherwise indicated.

## FACTS COMMON TO ALL ALLEGATIONS

36) Defendants provide an extensive network of pedestrian routes in the City of Port Jervis for public use. These facilities include sidewalks, crosswalks, pedestrian crossings, and other walkways (referred to as "pedestrian rights-of-way").

37) Providing and maintaining this extensive network of pedestrian rights-of-way is a critical public program and service that Defendants provide to residents of and visitors to the City of Port Jervis. However, Defendants have failed to make this network of pedestrian rights-of-way safe for and usable by persons with mobility impairments, thereby denying such individuals meaningful access to this critical public program and service, in violation of federal law.

38) Defendants have also failed on a systemic basis to construct safe and compliant curb ramps when the City resurfaces streets and sidewalks, in violation of federal law.

39) Barriers such as missing or hazardous curb ramps are pervasive throughout the City of Port Jervis.

*Metzgar v. City of Port Jervis, et al*
*Complaint*
*8 | P a g e*

40) Safe and accessible curb ramp design has become uniform throughout the Country due to the development of federal accessibility guidelines for curb ramps. These guidelines are the product of years of debate and compromise between disability groups and city governments. The result of this compromise, reflected in the ADA Accessibility Guidelines ("ADAAG"), is a set of minimum safety standards for curb ramps. Curb ramps that deviate from such standards, including the majority of curb ramps in the City of Port Jervis, are hazardous for persons with mobility impairments. **Exhibit "5"**.

41) According to ADAAG, A safe and compliant curb ramp must have the features listed below:

- The curb ramp must be at least 36 inches wide.
- The curb ramp's running slope can be no steeper than one inch up for every 12 inches across (1:12).
- Its cross slope can be no steeper than one inch up for every 48 inches across (1:48).
- There cannot be any other changes in level on the curb ramp.
- At the top of the curb ramp, there must be a landing with the same width as the curb ramp and a minimum length of 36 inches.
- There cannot be any abrupt changes in level between the curb ramp and the surface of the street.
- The surface of the street adjacent to the curb ramp cannot be steeper than one inch up for every 20 inches across (1:20).
- The two sloped areas on either side of the curb ramp, known as "flares," cannot be steeper than one inch up for every 10 inches across (1:10).

*Metzgar v. City of Port Jervis, et al*
*Complaint*
*9 | P a g e*

42) In addition to hazards presented by missing and non-compliant curb ramps, sidewalks throughout the City of Port Jervis are difficult to navigate or impassable for persons with disabilities due to pervasive mid-block barriers that Defendants have failed to remedy. For example, many sidewalks have abrupt changes in level that are hazardous to persons using wheelchairs, walkers and other mobility devices. Sidewalks also contain obstacles such as light poles, benches, and trash cans that impede the path of travel for wheelchair users.

43) Furthermore, Defendants have failed and are failing to prepare and implement a compliant Self-Evaluation regarding existing pedestrian right-of-way facilities and a compliant Transition Plan for making the City's existing pedestrian rights-of-way accessible, in violation of Title II of the ADA and Section 504. A compliant Self-Evaluation must include an evaluation of whether current services, policies and practices discriminate on the basis of disability. A compliant Transition Plan must include a schedule for making accessibility improvements to Defendants' facilities, including a schedule for providing compliant curb ramps where pedestrian areas cross streets. Federal law requires that the Transition Plan, once prepared, be made available to the public. Defendants have failed both to complete and make available to the public a compliant Self-Evaluation and a compliant Transition Plan.

44) This is particularly troubling when, as part of a partially New York State Department of Housing funded initiative, entitled "Complete Streets," the City acknowledged the requirements of conducting a Self-Evaluation and development of a Transition Plan in 2016; no such documents have been produced.

### EXPERIENCES OF PLAINTIFFS

45) Plaintiff has a mobility disability, which requires him to use an electric wheelchair. He travels the areas at issue in this lawsuit approximately 4-5 times per week to conduct his activities of daily living, to visit friends, for enjoyment, and for patronage of local businesses.

*Metzgar v. City of Port Jervis, et al*
*Complaint*
10 | P a g e

46) Plaintiff has used, and will continue to use, the sidewalks, curb ramps, and pedestrian crossings that comprise the City's sidewalk program.

47) As described above, the City's sidewalks and pedestrian rights-of-way in the areas covered by this Complaint are riddled with access barriers. These barriers cause frustration and anxiety to Plaintiff and requires him to expend substantially more effort to navigate to and from local locations and activities of daily living than would be required if the sidewalk and pedestrian right-of-way program was accessible.

48) The inaccessibility of Defendants' pedestrian rights-of-way impairs Plaintiff's ability to navigate the sidewalks, curb ramps, and pedestrian crossings independently. Plaintiff often has to identify alternate routes when traveling in the City due to the inaccessibility of the sidewalks and curb ramps.

## FIRST CAUSE OF ACTION

## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

## (42 U.S.C. § 12131, ET SEQ.)

49) Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

50) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, prohibits a public entity from excluding a person with a disability from participating in, or otherwise benefitting from, a program of the public entity, or otherwise discriminating against a person on the basis of disability: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

51) The term "disability" includes physical and mental impairments that substantially limit one or more major life activities. 42 U.S.C. § 12102(2). A "qualified individual with a

*Metzgar v. City of Port Jervis, et al*
*Complaint*
*11 | P a g e*

disability" means an "individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

52) The Plaintiff, and the proposed class are persons with disabilities within the meaning of the statute in that they have impairments which substantially limit one or more major life activities, such as walking. They are also qualified in that they are located in the City of Port Jervis and thus are eligible to benefit from the City's program of public pedestrian rights-of-way. Plaintiff, and the class are qualified individuals with disabilities within the meaning of 42 U.S.C. §§ 12102, 12131 and 28 C.F.R. § 35.104.

53) A "public entity" includes state and local governments, their agencies, and their instrumentalities. 42 U.S.C. § 12131(1). Defendants The City of Port Jervis, the Building Department, and the Department of Public Works, are public entities within the meaning of 42 U.S.C. § 12131 and 28 C.F.R. § 35.104.

54) Title II of the ADA requires public entities, including Defendants, to operate each of their programs, services or activities "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150; see also 28 C.F.R. §§ 35.149 & 35.151. Pedestrian rights-of-way themselves constitute a vital program, service or activity under Title II of the ADA. 28 C.F.R. § 35.104; *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002).

55) Defendants have failed to provide persons with mobility impairments meaningful access to their pedestrian rights-of-way program in the City, in violation of Title II of the ADA. Defendants have also failed to operate their pedestrian rights-of-way so that it is readily accessible

*Metzgar v. City of Port Jervis, et al*
*Complaint*
12 | P a g e

and usable by persons with mobility and vision impairments when viewed in its entirety, in violation Title II of the ADA.

56) Title II of the ADA requires that when a public entity newly constructs facilities or alters any existing facilities in any manner that affects the usability of such facilities, the newly constructed or altered portions must be made accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.lSl(b). Title II's implementing regulations specifically require a public entity to install compliant curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads, and/or highways at any time after January 26, 1992. 28 C.F.R. § 35.15l(e). A street resurfacing project by a public entity is an alteration triggering sidewalk and pedestrian route accessibility requirements under the meaning of the regulation. *Kinney v. Yerusalim*, 9 F.3d 1067, 1073-74 (3rd Cir. 1993).

57) Defendants have failed to install adequate and compliant curb ramps when newly constructing or altering sidewalks, streets, roads, and/or highways, in violation of Title II of the ADA.

58) The regulations implementing Title II of the ADA also require a public entity to maintain the features of all facilities required to be accessible under the ADA. 28 C.F.R. § 35.133. Facilities required to be accessible include roads, walks, and passageways. See 28 C.F.R. § 35.104.

59) Defendants have failed and continue to fail to maintain accessible features on pedestrian rights-of-way throughout the City, including failing to fix uneven, and/or crumbling pavement, failing to remove protruding and/or moveable obstructions, failing to ensure a sufficiently wide path of travel, and failing to correct excessive slopes and cross-slopes, among other failures to maintain accessible features of such facilities, in violation of Title II of the ADA.

60) The regulations implementing Title II of the ADA further require public entities to provide and maintain accessibility for temporary facilities, including but not limited to, "temporary

*Metzgar v. City of Port Jervis, et al*
*Complaint*
13 | P a g e

safe pedestrian passageways around a construction site." 28 C.F.R. 36 App. A. 4.1.1(4). Defendants have violated Title II of the ADA by failing to provide safe and usable alternate accessible routes for pedestrians with mobility impairments when providing temporary pedestrian routes due to construction that limits access to existing pedestrian routes.

61) Moreover, the regulations implementing Title II of the ADA require public entities to prepare and implement a Self-Evaluation and a Transition Plan to evaluate and improve the accessibility of their existing facilities. Public entities that have authority over streets, roads, or walkways, must include in their Transition Plan "a schedule for providing curb ramps or other sloped areas where pedestrian walks cross curbs." 28 C.F.R. § 35.150(d)(I)-(2). Public entities must also make a copy of the complete Transition Plan available for public inspection. See 28 C.F.R. § 35.150(d)(l). Defendants have violated Title II of the ADA by failing to prepare a Self-Evaluation of their existing pedestrian rights-of-way facilities in the City and by failing to prepare a complete and publicly available Transition Plan to improve the accessibility of such facilities, including a schedule for providing compliant curb ramps where pedestrian walks cross curbs – despite publicly acknowledging their duty to do so in 2016.

62) As a direct and proximate result of the aforementioned acts, Plaintiffs have been and continue to be injured.

63) Defendants' conduct constitutes an ongoing and continuous violation of Title II of the ADA and, as a result, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

*Metzgar v. City of Port Jervis, et al*
*Complaint*
*14 | P a g e*

## SECOND CAUSE OF ACTION

## VIOLATION OF SECTION 504 OF THE REHABILIATION ACT OF 1973

## (29 U.S.C. § 794, ET SEQ.)

64) Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

65) Section 504 of the Rehabilitation Act provides in pertinent part: "[N]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance ... " 29 U.S.C. § 794.

66) The Plaintiff, and the class are otherwise qualified individuals with disabilities within the meaning of the statute in that they have impairments which substantially limit one or more major life activities, such as walking, and have reason to and are otherwise eligible to participate in Defendants' pedestrian rights-of-way program. *See* 29 U.S.C. § 705(20)(B) (referencing 42 U.S.C. § 12102); *See also* 28 C.F.R. § 39.103.

67) Defendants are recipients of federal financial assistance sufficient to invoke the coverage of Section 504 and have received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

68) Defendants and their agents and employees have and continue to violate the Section 504 and the regulations promulgated thereunder by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs based solely by reason of their disabilities, to discrimination in the benefits and services of Defendants' pedestrian rights-of-way programs.

69) Under Section 504, a recipient of federal financial assistance must install compliant curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads and/or

*Metzgar v. City of Port Jervis, et al*
*Complaint*
15 | P a g e

highways any time after June 3, 1997. Defendants have additionally violated Section 504 by failing to construct compliant curb ramps at intersections, where they have newly constructed or altered sidewalks, streets, roads or highways since June 3, 1997.

70) As a direct and proximate cause of the aforementioned acts, Plaintiffs have been and continue to be injured.

71) Defendants' conduct constitutes an ongoing and continuous violation of Section 504 and, as a result, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

## FOURTH CAUSE OF ACTION

## DECLARATORY RELIEF

72) Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of this Complaint.

73) Plaintiffs contend that Defendants have failed, and are failing, to comply with applicable laws prohibiting discrimination against persons with disabilities in violation of Title II of the ADA, 42 U.S.C. § 12131 *et seq.,* and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*

74) Despite receiving a multitude of state and federal funds for becoming ADA compliant, Defendants have failed to correct their deficiencies.

75) A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**WHEREFORE**, Plaintiffs pray for relief as set forth below.

*Metzgar v. City of Port Jervis, et al*
*Complaint*
*16 | P a g e*

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for relief as follows, including but not limited to:

a. A declaration that Defendants' conduct as alleged herein has violated and continues to violate Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

b. An order and judgment enjoining Defendants from violating Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, and requiring Defendants to develop and implement a remedial plan to remedy such failures in order to provide meaningful access to the City of Port Jervis's pedestrian rights-of-way, including sidewalks, curb ramps and pedestrian crossings. At a minimum, Plaintiffs request that Defendants be enjoined to take the following actions:

   i. Ensure that pedestrian rights-of-way, when viewed in their entirety, are readily accessible and usable by persons with mobility impairments;

   ii. Undertake prompt remedial measures to eliminate physical barriers to access to pedestrian rights-of-way to make such facilities accessible to Plaintiffs in accordance with federal accessibility standards.

   iii. Maintain any existing accessible features of Defendants' pedestrian rights-of-way so that such features provide full usability for persons with mobility impairments.

*Metzgar v. City of Port Jervis, et al*
*Complaint*
17 | P a g e

      iv. Ensure that all future new construction and alterations to sidewalks and streets results in the provision of pedestrian rights-of-way that are fully compliant with federal accessibility standards;

      v. Prepare a complete Self-Evaluation and a complete and publicly available Transition Plan regarding the accessibility of existing pedestrian rights-of-way in compliance with Title II of the ADA and Section 504.

c. Plaintiffs' reasonable attorneys' fees and costs.

d. Such other and further relief as the Court deems just and proper.

Dated: Syosset, New York
       June 20, 2023

                                          Yours, etc.

                                          **BELL LAW GROUP, PLLC**

                                          By: *Daniel A. Johnston*
                                          Daniel A. Johnston, Esq
                                          Attorneys for Plaintiff
                                          116 Jackson Avenue
                                          Syosset, New York 11791
                                          (516) 280-3008
                                          dj@belllg.com

*Metzgar v. City of Port Jervis, et al*
*Complaint*
*18 | P a g e*